UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LANCELOT INVESTORS FUND, LP, et al., | ) | Case No. 08 B 28225 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| RONALD L. PETERSON, as Chapter 7 Trustee for | ) | |
| RWB Services, LLC, Lancelot Investors Fund, | ) | |
| L.P., Lancelot Investors Fund II, L.P., | ) | |
| Lancelot Investors Fund, Ltd., Colossus | ) | Adv. Proc. No. 10 A 01805 |
| Capital Fund, L.P. and Colossus Capital Fund, Ltd. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ATRADIUS TRADE CREDIT INSURANCE, | ) | |
| INC., and THE CHRISTENSEN GROUP, INC. | ) | |
| d/b/a THE CHRISTENSEN GROUP | ) | |
| INSURANCE RESOURCES INTERNATIONAL, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED MEMORANDUM OPINION ON MOTION TO DISMISS (DKT. No.14)**

In this matter Defendants Atradius Trade Credit Insurance, Inc. ("Atradius") and the Christensen Group, Inc. d/b/a Christensen Group Insurance Resources International ("Christensen") (collectively, "Defendants") seek dismissal with prejudice of the Adversary Complaint No. 10-01805 pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons that follow, the motion is denied in part.

## I. JURISDICTION

The court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a), as well as the Internal Operating Procedure 15(a) of the District Court for the Northern District of Illinois. This is a core proceeding over which the court has authority to enter a final judgment. 28 U.S.C. § 157(b)(2)(H). The court notes that the Trustee states in ¶ 16 of his adversary complaint that Counts I - IV of his complaint are core proceedings and that Counts V, VI and VII are non-core proceedings. The Trustee consents to the entry of final orders by this court on Counts V, VI and VII. Federal Rule of Bankruptcy Procedure 7008(a) requires in an adversary proceeding before a bankruptcy judge that "the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge." Federal Rule of Bankruptcy Procedure 7012(b) requires as to non-core matters that responsive pleadings address whether the responding party consents to the entry of final orders and judgments by the bankruptcy judge.

## II. FACTS

The Debtors consist of nineteen related entities that were engaged in the operation of related hedge funds or special purpose vehicles. Those entities are: SWC Services, LLC; Lien Acquisition, LLC; AGM, LLC; AGM II, LLC; KD1, LLC; KD2, LLC; KD3, LLC; KD4, LLC; KD5, LLC; KD6, LLC; KD7, LLC; KD8, LLC; RWB Services, LLC; Surge Capital II, LLC; Colossus Capital Fund, L.P.; Colossus Capital Fund, Ltd.; Lancelot Investors Fund, L.P.; Lancelot Investors Fund II, L.P.; and Lancelot Investors Fund, Ltd. Bankruptcy Case 08-28225, Docket No. 1.

The complaint herein seeks to recover insurance premium payments made by RWB Services, LLC, Lancelot Investors Fund, L.P., Lancelot Investors Fund II, L.P., Lancelot Investors Fund, Ltd., Colossus Capital Fund, L.P. and Colossus Capital Fund, Ltd. (collectively, "Premium Payment Debtors") in the amount of $5,862,200.50 (the "Premiums") to the Defendants in exchange for certain trade credit insurance policies (collectively, the "Policies") issued to insure against the risk that retailers Costco and Wal-Mart (the "Retailers") would become insolvent and unable to pay accounts receivable arising out of alleged sales by entities associated with Thomas J. Petters (the "Petters Entities"). For about a decade Atradius provided two Petters Entities - Petters Company, Inc. and Thousand Lakes, LLC (collectively, the "Purported Sellers") with credit insurance, brokered by Christensen. The Trustee alleges that because the Petters Entities were involved in a Ponzi Scheme in which they sold little or no goods, the policies either had no value or that the Premiums were excessive.

The Debtors were the largest financiers for the Petters Entities. They financed the Petters Entities through loans made in the form of promissory notes. The loans facilitated the alleged purchase of merchandise by the Petters Entities for resale to the Retailers. The merchandise served as security for the loans from the Debtors. *See* ¶ 49 of the adversary complaint. There were, however, no sales of merchandise, or the extent of any such sales was nominal, making the Debtors' security interest worthless.

The policies insured against the risk that the Retailers would become insolvent and unable to pay the accounts receivable claimed in the invoices generated by the Petters Entities. The triggering event for coverage was retailer insolvency. The coverage limits and the amount of the premium payment obligation would change depending on the retailer and the amount of

accounts receivable for which coverage was sought.

The Policies required the payment of an initial deposit premium which was calculated based on a percentage of the Petters Entities' estimated sales over the relevant policy period to each Retailer. At the end of each policy period, the final premium payment due from the deposit was calculated based on actual sales claimed by the Petters Entities during the relevant term. If the final premium was greater than the deposit premium, Atradius would be entitled to the difference.

The Trustee alleges that Gregory Bell ("Bell"), who ultimately controlled the Premium Payment Debtors through various management companies, *see* ¶ 6 of the complaint, did not participate in the Ponzi Scheme until after February 26, 2008 when he discovered that the Petters Entities could not make payments on the notes. He alleges that Bell concealed delinquencies under the promissory notes and permitted "round trip" banking transactions that gave investors the false impression that the Petters Entities were paying the notes in a timely manner.

On December 1, 2008, a grand jury in the United States District Court for the District of Minnesota indicted Petters on charges of mail and wire fraud, money laundering and obstruction of justice for defrauding investors, including the Debtors. On June 3, 2009, the grand jury returned a superseding indictment, adding counts against Petters and other Petters Entities. Petters was convicted of the charges on December 2, 2009. Bell was convicted of related charges.

The Trustee alleges that of the $5,862,200.50 in Premiums at issue, the Premium Payment Debtors paid all but $1,439,130 before Bell engaged in any wrongful conduct. *See* complaint at ¶ 44, a chart outlining Premiums and payment dates.

### III. APPLICABLE STANDARDS

Federal Rule of Civil Procedure 9(b), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7009, provides that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), provides that a party may assert by motion its defense of failure to state a claim upon which relief can be granted.

To survive a motion to dismiss, the complaint must contain sufficient facts, which if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff has to provide the "grounds of his 'entitlement to relief' rather than labels, conclusions or a formulaic recitation of the elements of a cause of action." *Id.* at 555. Bald assertions and conclusions of law do not suffice to defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006). A pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1944 (2009).

Count I alleges actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A) of the Bankruptcy Code and 740 ILCS 160/5(a)(1) of the Illinois Uniform Fraudulent Transfer Act ("UFTA").

Generally, a bankruptcy trustee may avoid transfers of an interest in a debtor's property or any obligation incurred by the debtor, that was made or incurred within two years before the filing date of the bankruptcy petition if the debtor:

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i),(ii) and (ii)(I) received less than a reasonably equivalent value in exchange for such transfer . . . and was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548(a)(1)(A) and (B)(i) and (ii)(I).

Illinois law provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor or

(2) without receiving a reasonably equivalent value in exchange for the transfer or the obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a).

Federal bankruptcy law and Illinois law on fraudulent transfers are, for purposes of this Motion to Dismiss, essentially identical. Illinois has adopted the Uniform Fraudulent Transfer

Act ("UFTA") which was enacted to reflect federal bankruptcy law. The Seventh Circuit has noted that the UFTA was an effort to harmonize state law with the Bankruptcy Code. *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)* 139 F.3d 574, 577 (7th Cir. 1998).

## IV. DISCUSSION

The Defendants' Motion to Dismiss attacks the sufficiency of the Trustee's pleading, noting that where there is no direct evidence of fraudulent intent that the Federal Rule of Civil Procedure 9(b) particularity requirement can be satisfied by allegations of "badges of fraud." Those "badges of fraud" are (1) whether the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (2) whether the debtor retained control of the asset; (3) whether the transfer was to a family member; (4) whether the transfer was prior to debtor incurring a substantial debt; (5) whether the transfer was substantially all of the debtor's assets; (6) whether the debtor received consideration for the transfer; (7) whether the transfer was disclosed or concealed; (8) whether the debtor made the transfer before or after being threatened with suit by creditors; and (9) whether the debtor absconded. *Grede v. Bank of New York Mellon*, 441 B.R. 864, 881 (N.D. Ill. 2010).

The Trustee relies on two badges of fraud: (1) whether the debtor was insolvent at the time of the transfer and (2) whether the debtor received consideration for the transfer.

The issue is whether the Trustee's complaint states a conclusory allegation that the Debtors' premium payments were made with actual intent to hinder, delay or defraud creditors. The complaint states that sometime after February 26, 2008 the Debtors began to conceal from investors the Petters Entities' delinquency on repaying the notes and permitted "round trip" transactions to conceal the fact that the Petters Entities could not repay the notes.

(Complaint ¶ 54).

To prevail, the Trustee must plead the requisite intent with respect to each transfer sought to be avoided and must connect the allegations against the Defendants to the Debtors' scheme to defraud creditors.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft,* 129 S.Ct. at 1949.

The complaint herein survives this test for plausibility. As instructed by the test, the court accepts as true that the transactions in issue bore the two "badges of fraud" noted in the Trustee's Response to the Motion to Dismiss at docket no. 22, p. 7: the Debtors' insolvency and lack of reasonably equivalent of value/consideration.

Ponzi Schemes involve enterprises which make payments to investors from money received from more recent investors rather than from profits of a legitimate business enterprise. *In re Lake States Commodities, Inc.,* 253 B.R. 866, 869 (Bankr. N.D. Ill. 2000*).* The law presumes that debtors who engage in Ponzi Schemes are insolvent because by definition a Ponzi Scheme inevitably becomes insolvent at some point. *In re First Commercial Mgmt. Group,* 279 B.R. 230, 235 (Bankr. N.D. Ill. 2002). The operation of the Ponzi Scheme by the Debtors supports the Trustee's position that he has adequately alleged intent to hinder and to defraud creditors on the part of the Debtors.

Actual fraud under the Bankruptcy Code and under the Illinois UFTA requires only that a transfer be made with intent to hinder, delay or defraud creditors. The Trustee's complaint is

plausible. The Defendants would have the court go further and evaluate the allegations for internal consistency and weight, issues that cannot be addressed at the motion to dismiss stage.

### a. Reasonably Equivalent Value

Under both the Bankruptcy Code and Illinois UFTA, a transfer will be deemed to be constructively fraudulent if made without reasonably equivalent value while the debtor was insolvent. Under each statute a transfer will not be deemed to be constructively fraudulent if the debtor received reasonably equivalent value in exchange for the transfer. 11 U.S.C. § 548(c); 740 ILCS 160/9.

The critical issue is whether reasonably equivalent value was given and received when Defendants Christensen and Atradius brokered and issued the insurance policies in issue. The measurement of reasonably equivalent value is a question of fact. *In re First Commercial Mgmt. Group,* 279 B.R. at 235, *quoting In re Image Worldwide, Ltd.,* 139 F.3d at 576. Neither the Trustee nor the Defendants dispute that nearly $6,000,000 was paid for insurance coverage of the Retailers' nonexistent accounts receivable. The parties do not argue about whether the Defendants charged the Premium Payment Debtors more than the insurance was worth or that the Defendants knew that the Premium Payment Debtors were involved in a Ponzi Scheme.[1] Instead, they differ on the legal significance of the exchange in the context of a Ponzi Scheme. The Trustee's position is that because there were no sales and, therefore, no accounts receivable, the Premium Payment Debtors got nothing for the nearly $6,000,000 paid to the Defendants to

---

[1] The Trustee does not directly allege that the Defendants knew about the Ponzi Scheme. Nor does he allege that the premiums were excessive. As to knowledge the Trustee's complaint alleges that the Defendants were not transferees who took for value, in good faith and without knowledge of the voidability of the transfers.

insure the accounts receivable. The Defendants argue that the transactions' value have to be determined based on the discrete transactions between the Debtors and the Defendants, rather than as transactions that took place within the larger context of the Ponzi Scheme. The court agrees. When determining whether debtors received reasonably equivalent value, courts have to isolate the transactions between the debtors and the defendants so that the value exchanged can be assessed based on the contractual relationship between the parties and the quid pro quo thereunder. *In re Churchill Mortgage Inv. Corp.*, 256 B.R. 664, 680 (Bankr. S.D.N.Y. 2000); *In re First Commercial Mgmt.Group*, 279 B.R. at 236.

In *In re First Commercial Mgmt. Group*, the defendant in a fraudulent conveyance action was a broker who unknowingly recruited investors for the debtor's Ponzi Scheme. The bankruptcy trustee for the debtor asserted that the commission payments the debtor made to the broker were fraudulent conveyances because the broker's services had no value in the context of the Ponzi Scheme, i.e., that the broker's services perpetuated an illegitimate enterprise and for that reason, did not have value. *Id.* at 236. There, when viewed narrowly with the focus on the transaction in issue, that court found that the broker provided reasonably equivalent value and granted summary judgment in favor of the broker. This matter comes before this court in a different posture as a motion to dismiss where the alleged facts have to be viewed in a light favorable to the pleader. The Defendants urge the court to go beyond viewing the facts alleged in the complaint in a light favorable to the pleader to instead find that the § 548(c) value and good faith defenses apply to defeat actual fraud liability and to find that the Premium Payment Debtors received reasonably equivalent value to defeat liability for constructive fraud. Such analysis would be improper on a motion to dismiss.

The Trustee alleges in his complaint at ¶ 35 that the Policies insuring the sales to Costco provided that the Purported Sellers would provide Atradius at the end of the policy period with an annual report of goods and services sold and delivered to Costco during the prior twelve months. At ¶ 36 of the complaint the Trustee alleges that the Purported Sellers never provided Defendants Atradius or Christensen with an annual report of actual sales and deliveries to Costco because no such sales existed. At ¶ 38 of his complaint the Trustee alleges that sales to Wal-Mart were to be reported on a quarterly basis. At ¶ 39 of his complaint the Trustee alleges that the Purported Sellers never provided Atradius or Christensen with quarterly reports of actual sales to Wal-Mart because no such sales existed. The Trustee's allegations that the annual reports were not made by the Purported Sellers tend to support the Defendants, reflecting their assertion that they did not know that the sales and accounts receivable were nonexistent or that the Petters Entities were operating a Ponzi Scheme.

In *In re Churchill Mortgage Investment Corp.*, the defendants were real estate brokers to whom the debtor paid commissions for originating mortgages and soliciting investors in one or more of the Churchill companies, as part of a Ponzi Scheme operation. The trustee sought to recover commissions of over $5,000,000 paid to the brokers for their services. The trustee did not assert that the brokers had any knowledge of the Ponzi Scheme or that their activities were fraudulent. The complaint therein alleged that because the Ponzi Scheme was fueled and perpetuated by the brokers' activities, providing revenues to the debtor and fostering the appearance of legitimate business operations, the defendants played an essential role in the Ponzi Scheme. *In re Churchill,* 256 B.R. at 667. Likewise, Counsel for Trustee Peterson argued at the April 5, 2011 hearing on the Motion to Dismiss that the investors were told that the accounts

receivable were insured in furtherance of the Petters Entities' Ponzi Scheme. Transcript of April 5, 2011 hearing at p. 21.

## V. FINDINGS

### a. Actual Fraud and Constructive Fraud

The Count I claim for actual fraud stands because the complaint's allegations are plausible. The Trustee has credibly alleged that transfers were made by the Premium Payment Debtors with the intent to hinder, delay and defraud creditors, the only components needed to establish an actual fraud claim. The existence of the Ponzi Scheme is some evidence of intent to defraud or hinder a creditor.

As to the 11 U.S.C. § 548(a)(1)(B) constructive fraud claims, the court finds that the complaint alleges sufficient evidence that the debtor did not receive reasonably equivalent value in exchange for such transfers. The court realizes that the facts are somewhat thin as the Trustee has not alleged that the Defendants had knowledge of the Ponzi Scheme or that the Premium Payment Debtors were charged too much for the insurance coverage obtained. The issue of consideration as a badge of fraud under § 548(a)(1)(A) as to Count I which alleges actual fraud and the similar issue of reasonably equivalent value under § 548(a)(1)(B) for the constructive fraud claims in Counts II, III and IV, are issues of fact. *In re Image Worldwide, Ltd.,* 139 F.3d at 576. Section 548(c) of the Bankruptcy Code (as does the Illinois UFTA at 740 ILCS 160/9) provides an exception to the voiding of fraudulent transfers: a "transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred." 11 U.S. C. § 548(c). Here, the issues of value and good faith are issues of fact which cannot be resolved in a motion to dismiss for failure to state a claim upon which relief

can be granted.

It has been held that good faith requires an arm's length transaction, as well as the following:

(I) an honest belief in the propriety of the activities in question;

(ii) no intent to take unconscionable advantage of others; and

(iii) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others.

*Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 183 (N.Y. App. Div., 1978), *citing Sparkman & McLean Co. v. Derber*, 481 P.2d 585 (Wash.Ct.App.1971).

Because the defense would be based on such subjective matters as the Defendants' honest belief, lack of intent to take advantage of others and knowledge of the Ponzi Scheme, classic factual issues, the court cannot resolve such issues of fact at this stage of the litigation.

Counts II, III, and IV alleging constructive fraud stand; the Motion to Dismiss is denied as to those Counts. The court cannot find, based on this record alone at this stage of the proceedings, that the transfers were made for reasonably equivalent value, an issue of fact on which the parties strongly disagree.

### b. Lack of Consideration

Counts V and VI seek a judgment of rescission in the Trustee's favor because the transfers lacked consideration. The Premium Payment Debtors bargained for and received insurance at a price that has not been alleged to be excessive or improper for any other reason. Defendants Atradius and Christensen assumed a risk, set aside reserves for the risk and provided insurance coverage for the risk of the Retailers' insolvency. That the accounts receivable did not

exist has not been alleged to be the fault of the Defendants or within their knowledge. The court finds that discerning consideration, good faith and reasonably equivalent value for purposes of evaluating fraudulent transfer counts, does not prevent the court from finding that the Premium Payment Debtors actually received consideration. The Premium Payment Debtors got what they bargained for - insurance coverage of the Retailers' accounts receivable. The fraudulent transfer analysis deals with totally separate issues of whether what the Premium Payment Debtors got in exchange for $5,862,200.50 was a reasonably equivalent value and whether the transfers were made in good faith.

One issue concerns the fact that the Premium Payment Debtors were not the insured entities. As to some policies they were loss payees; as to other Policies they were neither an insured entity nor a loss payee. The court declines to find that the Premium Payment Debtors received nothing - no consideration - for this reason. The Premiums were paid for the benefit of the Premium Payment Debtors. They were the largest financiers for the Petters Entities, financing the Petters Entities through loans made in the form of promissory notes. The loans facilitated the alleged purchases of merchandise by the Petters Entities over an extended period of time. The merchandise was security for the Debtors' loans. The nonexistence of the merchandise indicates that the notes were in reality not secured. However, the Debtors received an indirect benefit from the transactions, insurance coverage of the risk that the Retailers would not pay for merchandise. The Seventh Circuit acknowledged the potential validity of indirect benefits in fraudulent transfer analysis in *In re Image Worldwide. In re Image Worldwide, Ltd.*, 139 F.3d at 578. To say that the Premium Payment Debtors got nothing in the transactions is not true; they received recourse in the form of insurance.

The Counts V and VI rescission claims based on allegations that the transactions lacked consideration, and that the Premium Payment Debtors were not the insured entities or loss payees, are both dismissed without prejudice.

### c. Unjust Enrichment

Unjust enrichment is a "quasi-contract" theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results. *Utility Audit, Inc. v. Horace Mann Service Corp,* 383 F. 3d 683, 688-89 (7th Cir. 2004). It is undisputed herein that the transaction between the Petters Entities and the Defendants regarding insurance involved an express contract. *See* ¶ 19 of the Trustee's complaint which indicates that the policies and endorsements are attached to his complaint. The Count VII claim for unjust enrichment is dismissed with prejudice, as the parties operated under a contract, precluding recovery on a "quasi-contract" theory of unjust enrichment. The court acknowledges that the Premium Payment Debtors were not parties to the express contract but note that they may have been third party beneficiaries of the insurance coverage. The Count VII claim for unjust enrichment is dismissed with prejudice.

As noted in Section I, the Jurisdiction portion of this opinion, the Trustee asserts that Count VII is a non-core proceeding as to which he consents to the entry of final orders by this court. The Defendants have yet to answer. If they answer and do not consent to the entry of final orders as to Count VII by this court, proposed findings of facts and conclusions of law will be submitted to the District Court for entry of a final order pursuant to 28 U.S.C. § 157(c)(1).

## VI. CONCLUSION

The Motion to Dismiss is DENIED as to Counts I, II, III, and IV. Those Counts stand.

Counts V and VI are dismissed without prejudice. The Trustee may amend his complaint on or before June 14, 2011.

Count VII is dismissed with prejudice.

This adversary proceeding is set for status on June 16, 2011 at 11:00 a.m

Dated: June 6, 2011      ENTERED: *Jacqueline P. Cox*

J.P.Cox
_____
**Jacqueline P. Cox**
**United States Bankruptcy Judge**